**No. 3615**

**Second Circuit**
**(Second Division)**

———

**COMMERCIAL BANK v. McCAIN**

———

(June 11, 1931.  Opinion and Decree.)

———

J. Rush Wimberly, of Arcadia, attorney for plaintiff, appellee.

Phanor Breazeale, of Natchitoches, attorney for defendant, appellant.

TALIAFERRO, J. On February 3, 1920, defendant Tom McCain and one M. W. Fields signed a note for $550 as makers, in favor of plaintiff bank, which was indorsed by J. E. Currie, then sheriff of Bienville parish, and by J. T. Reeves. This note matured October 1st following its execution. McCain was a resident of Natchitoches parish. The other parties to the note lived in the parish of Bienville.

In May, 1921, Fields proposed to plaintiff to take a second mortgage on his 140-acre farm, which the president of the bank at first declined, stating that he did not believe a second mortgage worth anything, but afterwards assented to the proposition. Fields made a note to himself for $637.50, due November 1, 1921, and executed the mortgage to secure its payment. This note was turned over to plaintiff. The Federal Land Bank held first mortgage against this farm and foreclosed thereon. The property did not bring enough at sheriff's sale to pay the first mortgage debt. This occurred before the renewal note sued on was taken.

The note of $550 remaining unpaid, in February, 1922, plaintiff prepared a new note for $605 (principal of old note plus $55 interest), and sent it by mail to Fields with instructions that he sign same and have McCain sign it and return to the bank. This renewal note was dated February 28, 1922, and matured October 1st after date. It is the note sued on and is signed by Fields and McCain as makers. Reeves, one of the indorsers on the $550 note, died soon after date of the note, and Currie's name does not appear on the renewal note. The president of plaintiff bank testified that he did not consider either indorser's signature added anything to the note's security. Fields was not made a party to this suit, but plaintiff reserved its rights against him.

Defendant admits signing the note sued on and the original note of $550 also. He avers that he would not have signed the first note but for Currie's signature thereon as indorser; that they both signed the note as accommodation to Fields; that long after said original note was executed plaintiff wanted to have same renewed by the giving of a new note and Fields approached him about the matter, informing him that he did not know why the bank desired the new note as he had given a

mortgage on his property to cancel said original note signed by Fields, McCain, Currie, and Reeves; that as he lives some distance from Arcadia in Bienville parish, where plaintiff is located and Currie lived, he did not have the time to go there and discuss the matter, he signed said renewal note with the express understanding that if the bank had agreed to release Currie and him on said original note in that event the renewal note was not to be delivered, and if no release had been given by the bank then said renewal note was not to be delivered to it unless signed by Currie; that this was the last information he had on the subject until sued.

Defendant further avers that he has been informed and believes that plaintiff did agree to and did release him and Currie from the original note when Fields gave the mortgage to plaintiff on his farm; that the note sued on is incomplete because not signed by Currie and would not have been signed by respondent unless he believed Currie would also sign it; and was signed by respondent in error of the fact he had been released from the original debt. He pleads error, fraud, and misrepresentation in the procuring of his signature to the note sued on.

Judgment was rendered in favor of plaintiff for the amount of the note, attorney's fees, and interest. Defendant appealed.

Fields, co-maker, testified as a witness on behalf of defendant. He states that it was his understanding the mortgage note he gave the bank was to take care of the $550 note and release Currie and Mc-Cain. He admits that he voluntarily offered the mortgage to the bank and that Mr. Felts, president, at first declined it, stating that he did not think a second mortgage on the property would take care of the debt. He also admits that he signed the renewal note and carried it to McCain

and had him sign it also, then mailed it back to the bank. He did not present it to Currie for his signature. He admits that at the time the original note was negotiated he was indebted to McCain and that the debt was settled from the proceeds of the note. He states that McCain was not willing to sign the renewal note unless Currie's signature was on it and that he told McCain that Currie had agreed to sign it.

It is not contended that the bank was informed of McCain's position with reference to Currie's signature on the renewal note. That seems to have been discussed only by him and Fields. The renewal note reached the bank without Currie's indorsement thereon and, the evidence satisfies us, was accepted in lieu of the original note and carried as an asset of the bank thereafter.

Mr. Felts, president, is positive that by accepting the mortgage collateral offered by Fields there was no agreement or understanding to release any one bound on the original note of $550. He stated in accepting the mortgage note as collateral he was trying to protect McCain.

The defense in this case is a special one. The burden of proof was on defendant to establish his release. We do not think he has done so. Schwartz Bros. v. Shaheen, 8 La. App. 68; Civ. Code, arts. 1848, 2232.

Defendant would have better grounds of complaint on account of absence of Currie's indorsement of the renewal note if he (defendant) had been an indorser also; but as he is a maker, sustaining a primary obligation, while the indorser's obligation is only secondary, we cannot see wherein his rights have been prejudiced by releasing the indorser.

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving

value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value." Section 29, Act No. 64 of 1904.

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor." Id. sec. 60.

Slidell Sav. & Homestead Ass'n v. Seal, 2 La. App. 617.

Defendant having signed both the original and the renewal note as maker, his responsibility to the holder of these notes is fixed thereby. Even if Currie had indorsed the renewal note, as he did the original note, the plaintiff could have proceeded against the makers, primarily liable, without involving the indorsers in the suit.

The evidence makes it quite clear that the bank did not accept the mortgage note of Fields for any other purpose than to be carried as collateral security against the original note of these parties. If it did not add to the safety of the loan, it could do no injury. Evidently the bank felt that the loan was secured through the personal responsibility of the makers, and it would be convicting its officers of very poor business judgment to conclude that they were willing to surrender a good piece of paper for one only secured by a second mortgage on a farm which very soon thereafter failed to bring enough at foreclosure sale to discharge the first incumbrance against it.

Fields' evidence alone supports defendant's plea that he has been released. If Fields was sincere in his pretensions on this score, it is passing strange that he would take the renewal note to McCain for his signature and then sign it himself and send it to plaintiff.

Judgment appealed from is affirmed.